IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-614

No. COA20-699

Filed 16 November 2021

Wake County, Nos. 14 CVD 10425, 18 CVD 764

LISA JACKSON, Plaintiff,

v.

SAMUEL L. JACKSON, Defendant.

Appeal by defendant from order and judgment entered 10 December 2019 by Judge Christine Walczyk in Wake County District Court. Heard in the Court of Appeals 24 August 2021.

> *Fox Rothschild LLP, by Michelle D. Connell and Kip D. Nelson, for plaintiff-appellee.*
>
> *Sandlin Family Law Group, by Deborah Sandlin, for defendant-appellant.*

GORE, Judge.

¶ 1 Samuel L. Jackson ("defendant") appeals from an order in which the trial court established child support at the contractual amount set forth in the parties' separation agreement, and ordered defendant pay $21,505 in damages and $5,000 in attorney fees. Defendant argues that (1) the trial court erred in awarding child support to Lisa Jackson ("plaintiff"); (2) the trial court erred in awarding damages to plaintiff because the parties' contractual obligations had terminated; (3) the trial court erred in awarding attorney fees to plaintiff and not to defendant; and (4) the

trial court erred by imputing income to defendant. We affirm in part, vacate in part, and remand.

## I.     Background

Plaintiff and defendant married in 1992, and three children were born to the marriage.[1] On 17 May 2013, plaintiff and defendant separated and were subsequently divorced. In October 2013, the parties executed a separation agreement and property settlement ("separation agreement"), which resolved, *inter alia*, issues of child custody, child support, and attorneys' fees. The parties agreed to share equal physical and legal custody of the minor children. In the separation agreement, the parties agreed that defendant would pay plaintiff $1,150 per month in child support. The parties agreed that the child support payments shall terminate on the first occurrence of:

> (1) The parties' youngest living child reaches the age of 18 or graduates from high school or its equivalent, whichever occurs last, so long as satisfactory progress towards graduation is being made, but no later than age 20;
> (2) Emancipation of the children;
> (3) Death of the children;
> (4) Death of [defendant]; or
> (5) A court of competent jurisdiction enters a court order modifying or terminating child support.

---

[1] At the time of separation all three marital children were minors. However, at the time this action was commenced only one marital child remained a minor.

The parties further agreed that if either party shall be required to bring a civil action to obtain performance of the separation agreement, the prevailing party shall be entitled to indemnification by the other party for reasonable attorneys' fees. The separation agreement was never incorporated into a court order.

In the summer of 2016, plaintiff moved from Raleigh, North Carolina to Wilmington, North Carolina to live with her fiancé. At this time, the parties' oldest child had reached the age of majority. The parties' second child moved to Wilmington with plaintiff while their youngest child remained in Raleigh with defendant.

On 15 June 2017, defendant filed a motion in the cause for child support alleging plaintiff owed a duty of child support to defendant, because at the time the parties' only remaining minor child was living solely with defendant. Defendant requested the trial court award temporary and permanent child support pursuant to the North Carolina Child Support Guidelines, terminate the child support obligations contained in the separation agreement, and award defendant reasonable attorneys' fees. On 19 January 2018, plaintiff filed a complaint alleging defendant breached the parties' contract by unilaterally lowering, and subsequently ceasing, child support payments. Plaintiff sought specific performance of child support arrearages and reasonable attorneys' fees. Plaintiff also requested the trial court consolidate defendant's and plaintiff's actions.

In August of 2018, the parties' youngest daughter moved to Wilmington to live with plaintiff. On 12 September 2018, defendant voluntarily dismissed his motion for temporary child support, but not his action for permanent child support. On 2 January 2019, defendant filed his answer to plaintiff's complaint asserting the affirmative defense that the child support obligation under the separation agreement should terminate upon the trial court entering an order in defendant's action.

A hearing was held on 22 April 2019. On 17 September 2019, the Honorable Judge Walczyk sent an email to the parties with a written rendering of her ruling but had yet to enter an order in the matter. On 30 October 2019, following the hearing but before the trial court entered its order, plaintiff filed a motion requesting the trial court enter a temporary restraining order and preliminary injunction against defendant to hold in trust the funds from property sales by defendant, because defendant had previously informed plaintiff of his intent to appeal the trial court's order in her favor. Defendant objected to plaintiff's motion. The trial court denied plaintiff's motion as insufficient to warrant the entry of a temporary restraining order and preliminary injunction.

On 10 December 2019, the trial court entered an order establishing child support in favor of plaintiff in the amount of $1,150 per month, the contractual amount. The trial court concluded plaintiff was not entitled to specific performance but awarded plaintiff $21,505 in damages for defendant's breach of contract and

awarded plaintiff $5,000 in attorneys' fees. On 13 January 2020, defendant gave timely notice of appeal from the trial court's 10 December 2019 order.

## II. Standard of Review

"Our review of a child support order is limited to determining whether the trial court abused its discretion." *Brind'Amour v. Brind'Amour*, 196 N.C. App. 322, 327, 674 S.E.2d 448, 452 (2009). "Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Roberts v. McAllister*, 174 N.C. App. 369, 374, 621 S.E.2d 191, 195 (2005) (citation omitted). "The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Id.* (citation omitted).

## III. Child Support

"A separation agreement is a contract between the parties and the court is without power to modify it except (1) to provide for adequate support for minor children, and (2) with the mutual consent of the parties thereto where rights of third parties have not intervened." *McKaughn v. McKaughn*, 29 N.C. App. 702, 705, 225 S.E.2d 616, 618 (1976) (citation omitted). "[W]here parties to a separation agreement agree upon the amount for the support and maintenance of their minor children, there is a presumption in the absence of evidence to the contrary, that the amount

mutually agreed upon is just and reasonable." *Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E.2d 487, 491 (1963). A party seeking an initial judicial determination of child support, where the parties have previously executed an unincorporated separation agreement, must "show the amount of support necessary to meet the reasonable needs of the children at the time of the hearing." *Boyd v. Boyd*, 81 N.C. App. 71, 76, 343 S.E.2d 581, 585 (1986). The trial court will not alter the amount of child support contractually agreed upon by the parties, unless the amount necessary to meet the reasonable needs of the child substantially differs from the agreed upon amount. *Id.*

¶ 10 This Court in *Pataky v. Pataky* laid out the step-by-step process a trial court must take when analyzing a claim for child support, where the parties previously entered into an unincorporated separation agreement:

> [T]he court should first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be "inappropriate." The court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement. If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate. If, however, the court determines by the greater weight of the evidence, that the presumption of reasonableness afforded the separation agreement allowance has been rebutted, taking into account the needs of the child existing at the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c), the court then looks to the presumptive guidelines established through operation of G.S. § 50-

> 13.4(c1) and the court may nonetheless deviate if, upon
> motion of either party or by the court *sua sponte*, it
> determines application of the guidelines "would not meet
> or would exceed the needs of the child . . . or would be
> otherwise unjust or inappropriate."

*Pataky v. Pataky*, 160 N.C. App. 289, 305, 585 S.E.2d 404, 414-15 (2003), *aff'd per*

*curiam*, 359 N.C. 65, 602 S.E.2d 360 (2004).

¶ 11 Defendant first contends that the trial court erred by applying the *Pataky* presumption because his child support obligation under the unincorporated separation agreement terminated when he became the custodial parent for the parties only minor child. Defendant similarly argues that because the child support provisions terminated, the trial court erred by awarding plaintiff damages.

¶ 12 Defendant argues *Rustad v. Rustad*, 68 N.C. App. 58, 314 S.E.2d 275, *disc. rev. denied*, 311 N.C. 763, 321 S.E.2d 145 (1984), stands for the proposition that a change in custody of a minor child, in violation of the child custody provisions of the separation agreement, automatically terminates child support obligations under a separation agreement. However, defendant has an overly broad view of *Rustad*. The separation agreement in *Rustad* contemplated what would happen if custody of the minor children changed. In contrast, the separation agreement in the present matter did not contemplate the effect a possible violation or an agreed upon change in custody would have on child support. While the separation agreement did enumerate five specific events that would terminate child support, a change in custody of the

minor children was not included on this list. The facts of the present case are not analogous to the facts of *Rustad*, and therefore, *Rustad* does not control.

¶ 13        The separation agreement at issue here provides specific events that would terminate child support. Those events are:

> (1) The parties' youngest living child reaches the age of 18 or graduates from high school or its equivalent, whichever occurs last, so long as satisfactory progress towards graduation is being made, but no later than age 20;
> (2) Emancipation of the children;
> (3) Death of the children;
> (4) Death of [defendant]; or
> (5) A court of competent jurisdiction enters a court order modifying or terminating child support.

At the time defendant filed his action, the parties' youngest child had yet to reach the age of majority and was still enrolled in high school. The order entered by the trial court established child support at the contractual amount under the separation agreement, which does not constitute a modification or termination of child support. Contract principles govern an unincorporated separation agreement. *See McKaughn*, 29 N.C. App. at 705, 225 S.E.2d at 618. Thus, the only events that could terminate the child support obligation in the present case are those enumerated in the separation agreement, and the parties are subject to damages for breach of contract if they violate the terms of the separation agreement.

¶ 14        Further, the separation agreement included a clause stating, "It is the intention and agreement of the parties that each provision of this Agreement is

separate and independent from each other provision contained herein." Thus, any breach by plaintiff of the child custody provisions of the separation agreement, by moving to Wilmington with the parties' middle minor child and leaving their youngest child in the sole care of defendant, would have no effect on the status of the separation agreement's child support provisions. As a result, we conclude the separation agreement remained in force and the trial court did not err by finding as such and applying the *Pataky* presumption of reasonableness to the separation agreement nor by awarding damages for breach of the contract.

¶ 15    Defendant next argues that if we find the *Pataky* presumption applied to the separation agreement, the presumption was rebutted. If the amount necessary to meet the needs of the child, at the time of the hearing, "substantially exceeds" the amount of child support provided for in the separation agreement, then the presumption that the amount provided in the separation agreement is reasonable is rebutted. *Pataky*, 160 N.C. App. at 301, 585 S.E.2d at 412; *Boyd*, 81 N.C. App. at 76, 343 S.E.2d at 585 (1986).

¶ 16    "In order to determine the reasonable needs of the child, the trial court must hear evidence and make findings of *specific* fact on the child's actual past expenditures and present reasonable expenses." *Atwell v. Atwell*, 74 N.C. App. 231, 236, 328 S.E.2d 47, 50 (1985) (emphasis added). "[F]actual findings must be supported by evidence, and not based on speculation." *Id.* at 236-37, 328 S.E.2d at 51.

The trial court may not estimate what portion of household expenses are attributable to the minor child, without evidence supporting the attribution. *See id.* at 236, 328 S.E.2d at 51. The trial court must consider competent evidence of the minor child's yearly expenses incurred by both parents, even if the child lived with each parent at different times throughout the year, to determine the minor child's reasonable needs fully and accurately. *Id.*

¶ 17    The trial court's findings of fact as to the reasonable needs of the child are as follows:

> 33. The Defendant is currently paying health insurance premiums for himself and the children. He pays a total of $251.11 per month in health, dental and vision premiums. A portion of this amount is for the Defendant. The Court finds that the Defendant is paying $83.70 in premiums for Ella each month.
>
> . . .
>
> 44. The Plaintiff is engaged to Scott Diggs. The Plaintiff shares expenses with her fiancé. She pays for groceries and the children's expenses, but her fiancé pays the mortgage and expenses associated with the residence.
>
> . . .
>
> 58. The Plaintiff went through all of her bank statements and credit card statements for 2017, 2018, and 2019 and cross-referenced those expenses with the times that she had Ella in her care.
>
> 59. The Plaintiff testified that she incurred expenses on behalf of both children (Grace and Ella) in the amount of $35,726.77 in 2017. This includes expenses for Plaintiff's home and utilities, the adult child Grace, and the Plaintiff's legal costs relating to child support. After excluding

expenses relating to Grace and legal costs, the Court finds that the actual amount of reasonable expenses incurred by Plaintiff for Ella, in 2017, was $13,080.00 or $1,090.00 per month.

60. The Plaintiff testified that she incurred expenses on behalf of both children in the amount of $36,339.31 in 2018. This includes expenses for Plaintiff's home and utilities, the adult child Grace, and the Plaintiff's legal costs relating to child support. The Court finds that the Plaintiff actually incurred reasonable expenses for Ella, in 2018, in the amount of $9,495.00 or $791.00 per month.

61. Although Plaintiff failed to provide expenses paid after January 2019, the Plaintiff incurred costs relating to the child including for groceries and eating out, personal care, and driver's education ($385.00). The Plaintiff uses her car, with a $677.00 per month lease payment, to transport Ella to events and school.

. . .

64. The Defendant incurred tuition payments on behalf of Ella in 2017 in the amount of $7,325.00. The parties are no longer paying for Ravenscroft in Wake County.

65. In 2017, Ella was living primarily with Defendant and he was also incurring food expenses, health care premium expenses, and unreimbursed medical expenses. . . .

66. According to the Defendant's Financial Affidavit, he is currently incurring costs on behalf of the "children" including health care premiums, uninsured medical expenses, entertainment, allowances, eating out, etc. The Defendant listed $2,553.98 in expenses per month for the children's individual monthly expenses.

67. The Court recognizes that Ella has not stayed with the Defendant more than twice since January 2019 and many of the expenses are not actually being incurred by Plaintiff in 2019. It is important to note, however, that even if only half of these individual expenses are for Ella, that the Defendant is acknowledging that her care requires at least

> $1,276.99 per month. This does not include regular
> [re]curring expenses such as housing, utilities, and
> transportation, etc.

The evidence presented at the 22 April 2019 hearing as to the reasonable needs of the minor child included bank and credit card statements by plaintiff, as well as a financial affidavit, a record of payments for the children's expenses, health insurance costs, bank statements, and credit card statements by defendant. Both parties testified as to the minor child's expenses at the hearing. Further, plaintiff provided the trial court with notes regarding children's expenses, but because these notes were partly based on evidence not presented at the hearing, the exhibit was admitted for illustrative purposes only and not as substantive evidence.

¶ 18      We conclude that the trial court's findings of fact as to the minor child's reasonable needs at best made findings as to the minor child's past expenditures but did not make a finding of her reasonable present expenses. Finding of fact 61 states,

> Although Plaintiff failed to provide expenses paid after
> January 2019, the Plaintiff incurred costs relating to the
> child including for groceries and eating out, personal care,
> and driver's education ($385.00). The Plaintiff uses her car,
> with a $677.00 per month lease payment, to transport [the
> minor child] to events and school.

This finding of fact establishes that any findings as to the minor child's reasonable expenses at the time of the hearing in April 2019 was not supported by evidence. The trial court previously indicated in its findings of fact that the minor child lived with

plaintiff full-time beginning in 2018. Further, finding of fact 61 establishes that plaintiff failed to provide any evidence of expenses incurred after January 2019, thus plaintiff provided no evidence as to the minor child's current reasonable expenses *at the time of the hearing*.

¶ 19    The trial court's findings as to the minor child's past expenses, as incurred by the plaintiff, are also insufficient. For both 2017 and 2018 the trial court made findings as to plaintiff's total expenses for each year and then found the minor child's expenses for each year "[a]fter excluding expenses relating to [the parties' adult child] and legal costs. . . ." However, these findings do not show this Court that the trial court made findings to the minor child's expenses in 2017 and 2018 based on competent evidence and not speculation. The substantive evidence of expenses offered by plaintiff included bank and credit card statements. While these exhibits show how much money was spent by plaintiff, they do not provide information on what proportion of that money was spent to cover the minor child's expenses. The only evidence offered by plaintiff that delineated what costs were incurred specifically for the minor child was Exhibit 13, "notes regarding the children's expenses." However, Exhibit 13 was only admitted for illustrative purposes, thus the trial court could not have relied on this exhibit to determine how much of plaintiff's total expenses for 2017 and 2018 were for the minor child's needs. Because a trial court may not speculate as to what the minor child's expenses were and may not estimate what

portion of household expenses are attributable to the minor child, without evidence supporting the attribution, the trial court's findings of the minor child's expenses paid by plaintiff in 2017 and 2018 are insufficient without further evidence. *See Atwell*, 74 N.C. App. at 236-37, 328 S.E.2d at 51.

¶ 20 The trial court's factual findings regarding defendant's expenses for the minor child are also insufficient to establish the minor child's reasonable expenses at the time of the trial. The trial court found that despite the fact the minor child "has not stayed with Defendant more than twice since January 2019" defendant's financial affidavit "acknowledg[es] that her care requires at least $1,276.99 per month." This finding suffers the inherent flaw that if in 2019 the minor child is not living with defendant for more than brief visits, as the record shows, defendant's financials cannot serve as "competent evidence" to support a finding of the minor child's present expenses *at the time of the hearing*.

¶ 21 The trial court's findings of fact as to the minor child's reasonable needs at the time of the hearing were not supported by competent evidence and, therefore, were insufficient. Thus, the trial court's conclusion that the contractual child support amount was sufficient to meet the minor child's needs and that the *Pataky* presumption had been rebutted were insufficient as a matter of law. *See Thomas v. Thomas*, 233 N.C. App. 736, 738, 757 S.E.2d 375, 378 (2014) ("The trial court's conclusions of law must be supported by adequate findings of fact."). We remand this

issue to the trial court for further findings of fact as to the reasonable needs of the minor child and reconsideration of the *Pataky* presumption.

## IV. Attorney's Fees

¶ 22 Defendant argues the trial court erred in awarding attorney's fees to plaintiff because it could not be found that defendant breached the contract after the child support provision terminated, therefore, plaintiff was not entitled to attorney's fees under the separation agreement. Further, defendant argues that the trial court erred in denying his claim for attorney's fees, because he was statutorily entitled to child support and therefore, also entitled to attorney's fees under the separation agreement. Notably, defendant is not arguing that the amount of attorney's fees awarded was not reasonable, as a result, we only analyze and discuss the award of attorney's fees and not the reasonableness of the amount awarded.

¶ 23 As discussed above, the child support provision in the parties' separation agreement did not terminate and remained in force. Thus, the issue of who is entitled to attorney's fees under the separation agreement is a matter of contract interpretation. "[Q]uestions of contract interpretation are reviewed as a matter of law and the standard of review is *de novo*." *Price & Price Mech. of N.C., Inc. v. Miken Corp.*, 191 N.C. App. 177, 179, 661 S.E.2d 775, 777 (2008).

¶ 24 The attorney's fees provision in the separation agreement provides,

> In the event that [either party] shall be required to bring a

> civil action against the other to obtain any performance by the other of this Agreement, then the party bringing such lawsuit shall be indemnified and shall be entitled to receive from the other such reasonable attorney's fees in respect to the action filed as shall be fixed by the Court in the event that the party shall prevail and the action terminated in the moving party's favor. The party who prevails shall be indemnified by the other for attorney's fees and court costs he or she incurred in bringing or defending of a lawsuit as set forth herein. If such civil action is determined adversely to the moving party, the defending party shall be entitled to receive from the moving party such reasonable attorney's fees in respect to defending such action as shall be fixed by the Court.

Under the separation agreement, the prevailing party in a civil action is entitled to attorney's fees. In the instant matter, plaintiff was the prevailing party at the trial court, and as discussed above the trial court properly awarded her damages for breach of contract. Thus, the trial court did not err by awarding plaintiff reasonable attorney's fees in accordance with the separation agreement.

Defendant also contends that he was entitled to attorney's fees, pursuant to N.C. Gen. Stat. § 50-13.6 and the parties' agreement. Under the separation agreement, defendant would only be entitled to attorney's fees if he were the prevailing party in a civil action "to obtain any performance by [plaintiff] of this Agreement . . . ." Here, defendant was not the prevailing party in plaintiff's action, because plaintiff was entitled to damages for defendant's breach of the separation agreement, and defendant's action was brought to obtain a modification in the

separation agreement, not to enforce any provisions of the separation agreement. Thus, defendant is not entitled to attorney's fees under the separation agreement.

Under the statute, in child custody or support proceedings, "the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6 (2019). "The court's discretion in disallowing attorneys' fees is limited only by the abuse of discretion rule." *Puett v. Puett*, 75 N.C. App. 554, 558-59, 331 S.E.2d 287, 291 (1985) (citation omitted). We find no abuse of discretion in the present case.

Thus, the trial court did not err in finding defendant was not entitled to attorney's fees.

## V.    Determination of Income

Defendant's final argument is that the trial court erred in making finding of fact 30, because the trial court imputed income to defendant, and finding of fact 48, because it is not based on competent evidence.

"Normally, a party's ability to pay child support is determined by that party's income at the time the award is made." *Pataky*, 160 N.C. App. at 306, 585 S.E.2d at 415 (cleaned up). A finding of a party's income may be based only on their actual income at the time of the hearing; projected earnings may not be considered. *Atwell*, 74 N.C. App. at 235, 328 S.E.2d at 50. Here, finding of fact 30 states,

> Defendant currently works at Charter Communications (Spectrum). His base salary is $58,000 per year. Although, the Defendant hopes to earn more in the future, with commissions and bonuses, the Court finds Defendant is currently earning $71,000 annually or $5,916.00 per month.

Evidence offered by defendant indicate that his base salary is $58,000 per year and that he expects to earn commissions but has yet to earn any commissions. Additionally, defendant testified he would receive income between $12,000 and $15,000 over three payments during a one-time "ramp-up period." At the time of the hearing, defendant had received two of the three payments from the "ramp-up period" and the third payment was scheduled to be deposited later that week. Thus, we conclude the trial court's finding of defendant's income was supported by competent evidence and not in error.

¶ 30          Defendant also argues that the trial court's finding of plaintiff's income was not supported by competent evidence because plaintiff receives additional income from a family trust and support from her fiancé and mother. The trial court's finding of fact 48 states, "For the purpose of child support, the Court finds that the Plaintiff is earning $4,343.00 per month." For the purpose of child support actions, income includes any "maintenance received from persons other than parties to the instant action." *Spicer v. Spicer*, 168 N.C. App. 283, 288, 607 S.E.2d 678, 682 (2005). Further, the trial court *may* consider support from third parties but is not required to. *See*

*Guilford Cnty. ex rel. Easter v. Easter*, 344 N.C. 166, 171, 473 S.E.2d 6, 9 (1996). Here, a careful review of the evidence in the record and the trial court's full findings of fact indicate that the $4,343.00 per month attributed to plaintiff includes income from her family's trust and support from her fiancé. Thus, we conclude the trial court did not err in determining plaintiff's income.

## VI.     Conclusion

For the foregoing reasons we affirm the trial court's order in part and reverse and remand in part for further findings. We affirm the portions of the order in which the trial court awarded damages for breach of contract and attorney's fees to plaintiff. We vacate the portions of the order in which the trial court established child support at the contractual amount, $1,150.00 per month to plaintiff. We therefore remand the case to the trial court for further proceedings consistent with this opinion. The trial court may receive additional evidence for consideration on remand as needed to address the issues discussed in this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges ZACHARY and COLLINS concur.